UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:24-CV-00218-CHL

TRAVIS B.,[1]                                                                          Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,                              Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is the Complaint filed by Plaintiff, Travis B. ("Claimant"). Claimant

seeks judicial review of the final decision of the Commissioner of Social Security ("the

Commissioner"). (DN 1.) Claimant and the Commissioner each filed a Fact and Law Summary

and/or supporting brief.[2] (DNs 10, 10-1, 12.) Claimant did not file a reply, and his time to do so

has expired. (DN 9.) The Parties have consented to the jurisdiction of a Magistrate Judge to enter

judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event an

appeal is filed. (DN 8.) Therefore, this matter is ripe for review.

For the reasons set forth below, the final decision of the Commissioner is **AFFIRMED**.

## I.       BACKGROUND

On April 14, 2020, Claimant applied for disability insurance benefits under Title II

("DIB").[3] (R. at 116-17, 125, 127, 341-47.) His application alleged disability beginning on June

---

[1] Pursuant to General Order 23-02, the Plaintiff in this case is identified and referenced solely by first name and last initial.

[2] Claimant's brief exceeds the page limits prescribed by Local Rule. *See* LR 7.1(d) ("Motions and responses may not exceed 25 pages without leave of Court."). While the Court has considered the entirety of Claimant's brief in making the instant decision, Claimant's counsel is admonished to ensure that future filings comport with the applicable page limits.

[3] While Claimant also applied at that time for supplemental security income under Title XVI, his application was denied due to excess resources. (R. at 175-84, 348-55.) It does not appear that Claimant sought reconsideration of that decision. (*Id.* at 190-91.) Therefore, the only application pertinent to the Court's instant review is Claimant's DIB application.

1, 2017, due to injuries to his lower back and shoulders.  (*Id.* at 17, 117, 127.)  Claimant's application was denied initially and again on reconsideration.  (*Id.* at 171-74, 194-208.)

At Claimant's request, Administrative Law Judge ("ALJ") Jonathan Stanley ("the ALJ") conducted a hearing on Claimant's application on September 28, 2021.  (*Id.* at 82-115, 209-10.) Claimant attended the hearing by telephone with his attorney.  (*Id.* at 84, 147.)  The ALJ issued an unfavorable decision on October 19, 2021, finding that Claimant was not disabled from June 1, 2017, through the date of the ALJ's decision.  (*Id.* at 144-64.)

Claimant subsequently requested review by the Appeals Council, which granted the request and remanded the case back to the ALJ for further review on September 9, 2022.  (*Id.* at 165-70, 268-70, 463-67.)   In doing so, the Appeals Council found that the ALJ had not adequately evaluated the opinion evidence of record from two of Claimant's providers: Dr. Charles Key, M.D., ("Dr. Key") and Michele McClure, APRN ("Ms. McClure").  (*Id.* at 167.)  The Appeals Council directed the ALJ on remand to offer the Claimant an opportunity for a hearing and to:

> Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the medical source opinion(s) pursuant to the provisions of 20 CFR 404.1520c. As appropriate, the Administrative Law Judge may request the medical sources provide additional evidence and/or further clarification of the opinions (20 CFR 404.1520b). The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's medical sources.

(*Id.* at 168.)

On remand, the ALJ held an additional hearing on Claimant's application on March 16, 2023.  (*Id.* at 43-81.)  Claimant again attended the hearing by telephone with his attorney, and an impartial vocational expert also attended and testified during the hearing.  (*Id.* at 17, 46.)  During the hearing, Claimant testified to the following.  Claimant has problems with his neck and lower

back and was initially injured at work in 2007. (*Id.* at 55.) He has a lot of pain in his lower back, and when he does anything, the pain shoots down his legs and also goes into his hips. (*Id.* at 55-56.) His neck had just started bothering him in the last four to five years. (*Id.* at 56.) He has problems with both knees. (*Id.* at 57.) He had been getting injections, but they aren't helping; his doctor has recommended nerve ablations though eventually he will need knee replacements. (*Id.* at 57-58.) He uses both ice and heat every day on his back and knees and sits with his feet elevated, which helps to keep the swelling down. (*Id.* at 59.) He has been told he needs shoulder replacement surgery and has been getting injections in his shoulders as well. (*Id.* at 60-61.) He has a bulging disc in his neck that pinches the nerves that go down his arms and make his arms go to sleep. (*Id.* at 61.) His arthritis makes it hard to move his fingers, and while he takes medication for the arthritis, the medications have affected his vision and made his hair fall out. (*Id.* at 61-62.) His hands also freeze up and fall asleep, making him drop things. (*Id.* at 63, 67-68.) Being up on his feet and moving around exacerbates his pain, and he is never on his feet for more than half an hour at a time. (*Id.* at 63.) He spends most of his day lying down on the couch or in bed. (*Id.* at 64.) He has found nothing that gives him relief from the symptoms he is having with his shoulders, arms, and hands. (*Id.* at 65.)

The ALJ issued a new, unfavorable decision on April 11, 2023. (*Id.* at 14-42.) Applying the five-step sequential evaluation process promulgated by the Commissioner to determine whether an individual is disabled, the ALJ made the following findings. First, the Claimant had not engaged in substantial gainful activity between his June 1, 2017, alleged onset date and his date last insured of December 31, 2022. (*Id.* at 20.) Second, Claimant had the following severe impairments: degenerative disc disease of the cervical spine; degenerative disc disease of the lumbar spine with sciatica; osteoarthritis/degenerative joint disease of the bilateral shoulders with

tendinopathy/biceps tendinitis, status post left rotator cuff repair and biceps tenodesis; left ulnar neuropathy, status post cubital tunnel transposition; right cubital tunnel syndrome; bilateral carpal tunnel syndrome, status post right release; osteoarthritis/degenerative joint disease of the bilateral knees, status post right partial medial meniscectomy; myofascial pain syndrome/unspecified myalgia; inflammatory polyarthritis/generalized osteoarthritis/polyarthralgia; positive ANA; Anti-RNP antibodies present; rheumatoid arthritis; and obesity.  (*Id.*)  Third, Claimant did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (*Id.* at 21-22.)  Fourth, through his date last insured, Claimant had the residual functional capacity ("RFC") to perform sedentary work with the following exceptions:

> he can stand and walk for up to two hours in an eight hour workday, but for no more than one hour without a three minute interruption to alternate positions; can occasionally push and pull using the upper extremities; can occasionally push and pull using the lower extremities; can occasionally climb stairs and ramps, but cannot climb ropes, ladders and scaffolds; can occasionally balance, stoop, kneel and crouch; cannot crawl; can occasionally reach overhead; can frequently handle, finger and feel; can occasionally operate foot pedals; must avoid concentrated exposure to vibration; and he cannot work at unprotected heights or around hazards such as heavy equipment.

(*Id.* at 22-23.)  Additionally at step four, the ALJ found that Claimant was able to perform his past relevant work as a family case worker because that work did not require the performance of work related activities precluded by Claimant's RFC.  (*Id.* at 32.)  In the alternative, the ALJ found that, considering Claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Claimant could perform.  (*Id.*)  The ALJ concluded that Claimant was not under a disability from July 1, 2017, through December 31, 2022, his date last insured.  (*Id.* at 33.)

Claimant subsequently requested an appeal to the Appeals Council, which denied his request for review on February 2, 2024. (*Id.* at 1-6, 337-40, 518-22.) At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 422.210(a) (2024); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), Claimant is presumed to have received that decision five days later. 20 C.F.R. § 422.210(c). Accordingly, Claimant timely filed this action on April 2, 2024. (DN 1.)

## II.    DISCUSSION

The Social Security Act authorizes payments of DIB to persons with disabilities. *See* 42 U.S.C. §§ 401-434. An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a) (2024).

### A.    Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that

if the court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

### B.    Five-Step Sequential Evaluation Process for Evaluating Disability

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating whether an individual is disabled. 20 C.F.R. § 404.1520 (2024). In summary, the evaluation process proceeds as follows:

(1)    Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(2)    Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[4] and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

(3)    Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

(4)    Does the claimant have the RFC to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

(5)    Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

20 C.F.R. § 404.1520(a)(4).

---

[4] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months. 20 C.F.R. § 404.1509 (2024).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C.    Claimant's Contentions

Claimant alleged that that ALJ erred in determining his RFC. (DN 10-1.) An ALJ's RFC finding is the ALJ's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c) (2024). The ALJ bases his or her determination on all relevant evidence in the case record. 20 C.F.R. § 404.1545(a)(1)-(4). Thus, in making his or her determination of a claimant's RFC, an ALJ must necessarily evaluate the persuasiveness of the medical opinions in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529 (2024). The ALJ must consider both severe and non-severe impairments in assessing a claimant's RFC. 20 C.F.R. § 404.1545(a)(2).

Claimant argued that the ALJ erred in his analysis of the opinion evidence of record, specifically, the ALJ's analysis of his treating orthopedic surgeon, Dr. Key.[5] (DN 10-1.) The applicable regulations set forth specific rules an ALJ must follow with regard to opinion evidence.

---

[5] While portions of Claimant's brief made generic references to the ALJ "fail[ing] to follow applicable Social Security rules/regulations regarding proper analysis of medical evidence" and "reject[ing] most of the proof regarding the [C]laimant's inability to work full-time," the only regulation Claimant cited specifically was 20 C.F.R. § 404.1520c regarding an ALJ's consideration of medical opinions. (DN 10-1, at PageID # 2032, 2059.) And the only medical "proof" that Claimant referenced specifically in the argument section of his brief was Dr. Key's opinion. (*Id.* at 2061.) Thus, the ALJ's treatment of Dr. Key's opinion is the only issue the Court will address specifically herein. To the extent that Claimant intended to challenge the ALJ's treatment of other medical evidence of record—opinion or otherwise—the Court finds those perfunctory challenges waived. *See United States v. Layne*, 192 F.3d 556, 566-67 (6th Cir. 1999) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (finding that issues adverted to in a "perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"); *Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006).

Pursuant to 20 C.F.R. § 404.1520c, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" in the record regardless of its source.[6] 20 C.F.R. § 404.1520c(a). Instead, an ALJ will evaluate the "persuasiveness" of a medical opinion by reference to the five factors listed in the regulation: supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(a), (c). The regulations provide that the two most important factors are supportability and consistency and that an ALJ is required to "explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 404.1520c(a), (b)(2). However, the regulations state that "it is not administratively feasible for [an ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions . . . in [the] case record"; thus, an ALJ is not required to explicitly discuss how he or she weighed the factors of relationship with the claimant,[7] specialization, and other factors.[8] 20 C.F.R. § 404.1520c(b)(1)-(2). Where two medical opinions reach different conclusions but are "equally well-supported . . . and consistent with the record," an ALJ is required to state how he or she considered the other "most persuasive" factors in making his or her decision. 20 C.F.R. § 404.1520c(b)(3).

The Sixth Circuit has not elucidated a specific standard to determine whether an ALJ sufficiently complied with the requirement to "articulate how [he or she] considered the medical opinions" and "explain how [he or she] considered the supportability and consistency factors"

---

[6] This language indicates that the new regulation has done away with the controlling weight and other old rules regarding the weight to be ascribed to medical opinions. 20 C.F.R. § 404.1527(c)(2) (2024).

[7] In assessing this factor, the regulations require an ALJ to consider the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. § 404.1520c(c)(3).

[8] The regulations provide that an ALJ will consider any "other factors that tend to support or contradict a medical opinion." 20 C.F.R. § 404.1520c(c)(5). These factors include, but are not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim," "whether new evidence [ ] receive[d] after the medical source made his or her medical opinion . . . makes the medical opinion . . . more or less persuasive," and whether the medical source has "an understanding of [the] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(5).

under the new regulations. 20 C.F.R. § 404.1520c(b).  *But see Adams v. Comm'r of Soc. Sec.*, No. 23-3284, 2023 WL 6366106, at *2 (6th Cir. Sept. 28, 2023) (noting that the new regulations "substantially reduce[ ] the ALJ's obligation to explain the basis for his or her assessment of medical opinions"); *Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813, 822 (6th Cir. 2020) (White, J. dissenting) (applying the new regulations and finding that "[t]he ALJ did not clearly analyze the supportability and consistency of the state consultants' assessments, as compared to other evidence in the record which supported [the plaintiff]'s claims").  However, district courts applying the new regulations within this circuit consistently apply the articulation requirement literally.  *See, e.g.*, *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. 2021) ("The administrative adjudicator has the obligation in the first instance to show his or her work, i.e., to explain in detail *how the factors actually were applied* in each case, to each medical source. Resorting to boilerplate language to support a finding of unpersuasiveness does not satisfy that obligation." (emphasis in original)); *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021) ("Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of [her] reasoning."); *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20-CV-1364, 2021 WL 119287, at *1 (N.D. Ohio Jan. 13, 2021) (finding that "the [new] regulations do require that the ALJ clearly explain his consideration of the opinions and identify the evidence supporting his conclusions").

On June 17, 2021, Dr. Key completed a Medical Source Statement regarding Claimant's ability to perform work-related physical activities.  (R. at 1058-64.)  Dr. Key opined that Claimant could frequently lift and carry eleven to twenty pounds, only occasionally lift twenty-one to fifty

pounds, and never lift anything heavier than fifty pounds. (*Id.* at 1058.) He opined that Claimant should never be exposed to unprotected heights, only occasionally be exposed to vibrations, and frequently be exposed to extreme cold and heat. (*Id.* at 1059.) He opined that Claimant could sit for eight hours at a time without interruption in an eight-hour workday but could only stand and walk for one hour at a time and one hour total in an eight-hour workday. (*Id.* at 1060.) In support of those restrictions, Dr. Key noted that Claimant's MRI results showed osteoarthrosis and a meniscus tear. (*Id.*) Dr. Key also opined that Claimant could never perform overhead reaching with his bilateral upper extremities and only occasionally perform all other reaching, handling, fingering, feeling, pushing, and pulling with his bilateral upper extremities due to Claimant's history of bilateral carpal tunnel syndrome, chronic right hand ulnar nerve injury, bilateral shoulder glenohumeral arthritis, and cervical radiculopathy. (*Id.* at 1061.) He opined that Claimant could never climb ladders or scaffolds, kneel, crouch, and crawl and only occasionally climb stairs and ramps, balance, and stoop. (*Id.* at 1062.) He opined that Claimant would need a job that permits shifting position at will from sitting, standing, or walking and that Claimant's impairments would likely produce "good" and "bad" days such that Claimant would be absent from work two or more days per month. (*Id.* at 1063.) In further support of his opinion, Dr. Key submitted a narrative statement regarding Claimant's "multiple orthopedic complaints" including bilateral shoulder osteoarthritis, herniated disc in his cervical spine causing radicular symptoms, bilateral carpal tunnel syndrome, chronic ulnar nerve injury, and right knee injury including medial compartment arthritis, a grade 1 MCL sprain, and a complex tear of the posterior horn of the medial meniscus. (*Id.* at 1064.) Dr. Key reiterated that these issues would affect Claimant's ability to perform overhead activities, strength in his upper extremities, use of his right hand, ability to stand for long periods of time, and ability to do prolonged walking. (*Id.*)

Dr. Key subsequently provided an additional narrative summary on March 9, 2023. (*Id.* at 1965.) Dr. Key reiterated that Claimant had multiple orthopedic complaints. (*Id.*) He noted that he had primarily cared for Claimant's shoulders and knees and opined that Claimant would have difficulty with overhead work. (*Id.*) He recommended that Claimant "do no more than [one] hour standing and walking at work each day due to the amount of arthritis he has in his knees" as well as because "[p]rolonged standing will acutely exacerbate his knee pain and cause his knees to swell." (*Id.*)

The ALJ summarized Dr. Key's opinions in his decision but ultimately found them unpersuasive. (*Id.* at 30-31.) He explained,

> The undersigned finds these opinions to be unpersuasive, as the severe limitations, including his ability to walk and stand, and is [*sic*] limited to performing no overhead reaching, only occasional reaching in other directions, handling, fingering, feeling, pushing, and pulling, and no kneeling, crouching, or crawling, are not supported by Dr. Key's examination findings. Dr. Key's examination findings also do not support his opinion regarding the ability to shift positions at will, or that he will be absent two or more days per month. For example, Dr. Key's treatment notes do include some abnormal findings, including that he had pain with Neer and Hawkins impingement, as well as some pain with O'Brien's test and mild pain with empty can testing. However, his findings also include that the claimant could raise his left arm above his head. Dr. Key also noted that an examination of the bilateral knees showed some crepitus, but full range of motion, and only mild effusion was noted. Additionally, the opinion is inconsistent with the record as a whole, including that he had tenderness to palpation of some PIPs, the bilateral knees, and the bilateral shoulders. However, his gait was within normal limits, range of motion was within normal limits, and muscle strength was normal (Exhibit 28F; 40F).

(*Id.*) Claimant argued that this discussion was the product of multiple errors, but, for the reasons set forth below, the Court finds no error in the ALJ's analysis.

First, Claimant argued that this discussion did not comply with the requirements of 20 C.F.R. § 404.1520c. The Court disagrees. As to any procedural error, the above-discussion references both the supportability and consistency factors as required and includes specific

examples in support of the ALJ's analysis.  Thus, the ALJ's discussion comports with the regulatory requirements.

Second, Claimant argued that the ALJ's rejection of Dr. Key's opinion "amount[ed] to a lawyer (all ALJs are lawyers and presumably not also MDs) making a medical opinion regarding medical evidence). An ALJ is not authorized, nor qualified, to offer such an opinion."  (DN 10-1, at PageID # 2061.)  He also argued that since the ALJ could not make such a medical judgment, he should have relied on other opinion evidence to make his determination that Dr. Key's opinion was inconsistent with the medical evidence of record.  (*Id.* at 2064.)  Notably, he did not support these arguments with any case law, nor is the Court aware of any supporting his position.  Instead, Claimant's argument runs afoul of Sixth Circuit precedent.  Claimant's argument is tantamount to requiring the ALJ to base his determination of a claimant's RFC on a medical opinion, but there is no such requirement.  *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727 (6th Cir. 2013) ("The ALJ was not required to obtain a medical expert to interpret the medical evidence related to [claimant's] physical impairments."); *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015) (recognizing that there is no authority to support the proposition "that an ALJ must, as a matter of law, seek out a physician's medical opinion where one is not offered").  Instead, the determination of a claimant's RFC is left to the ALJ.  20 C.F.R. § 404.1546(c).  Additionally, there is no requirement in 20 C.F.R. § 404.1520c that an ALJ's consistency and supportability analysis be either grounded in medical opinion evidence or explicitly reference other medical opinions.  *See* 20 C.F.R. § 404.1520c(c)(2) (requiring an ALJ to consider a medical opinion by reference to five specified factors, one of which is how consistent the medical opinion is with "the evidence from other medical sources and nonmedical sources in the claim" not merely how consistent it is with other medical opinions).  Claimant's suggestions to the contrary are, thus, rejected.

Third, Claimant appeared to argue that the ALJ's consistency and supportability analysis was not supported by substantial evidence. (DN 10-1, at PageID # 2062 ("[T]he Administrative Law Judge's use of 'inconsistency' to reject medical proof is not supported by substantial evidence of record, in that there is not any medical evidence of record which specifically states the inconsistencies suggested by the Administrative Law Judge actually exist.").) But Claimant's argument on this point is opaque because the Claimant's argument contains no citations to medical evidence that the Claimant believes the ALJ ignored or that disproved his conclusion. In fact, the argument section of Claimant's brief doesn't contain a single pertinent citation to the administrative record.[9] The section of the Claimant's brief labeled "Statement of the Case" does contain a 22.5 page summary of the medical evidence of record, but the summary itself does not "support assertions of fact by citations to particular parts of the record" as required by both this Court's June 12, 2024, Order (DN 9) and the Rule 5 of the Supplemental Rules for Social Security Actions. Instead, Claimant appears to have repurposed a medical summary he originally prepared for pre-hearing briefs submitted to the ALJ for submission to the Court despite the fact that the summary already appeared elsewhere in the record. (Compare DN 10-1, at PageID # 2035-58, *with* R. at 448-58, 486-511.) The only update Claimant made to the document was to add the citation to the initial starting page of each exhibit, information the Court could have gleaned from

---

[9] The only citation to the record in Claimant's argument is to "TR 2024-2025, 1117-1123." (DN 10-1, at PageID # 2059, 2061.) Claimant wrote, "[T]he Administrative Law Judge rejected the evidence submitted by the plaintiff from his treating orthopedic surgeon, Dr. Charles Key, that supports the argument that he is physically incapable of full-time employment in a competitive economy, and it is difficult to say what evidence the ALJ relied on to support his finding regarding the Claimant's RFC (TR 2024-2025; 1117-1123)." (*Id.* at 2059; *id.* at 2061 ("[T]he ALJ rejected the opinions of Dr. Charles Key, the claimant's treating orthopedic, by saying his opinions were not consistent with the record as a whole, or that the clinical findings from Dr. Key's exams of the claimant did not support the restrictions he stated (TR 2024-2025; 1117-1123).").) But the record does not contain pages numbered 2024-2025, as the record itself goes from 1-1966. And despite suggesting that pages 1117-1123 relate to Dr. Key, they contain no reference to him. Pages 1117-18 are lab results from testing ordered by Mc. McClure, and pages 1119-1123 are a combination of radiology reports from testing ordered by a Dr. Kenneth Farmer and an unsigned office visits from September 5, 2007, the transcript index identifies as being to Dr. Gregory Nazar. (R. at 1117-23.) Thus, the significance of these records to Claimant's point is wholly unclear to the Court.

the transcript index without Claimant's assistance.  The Court finds Claimant's presentation of this summary unhelpful.  The summary itself was not a narrative description of the records Claimant found salient; it was an exhibit-by-exhibit general summary of the medical evidence.  The manner in which the Claimant presented his summary is tantamount to asking the Court to guess which records he believed supported his arguments; the Court declines to do so.

Instead, having reviewed the ALJ's discussion of Dr. Key's opinions, those opinions, and Dr. Key's own treatment records, the Court finds the ALJ's discussion of Dr. Key's opinion supported by substantial evidence.  As to supportability, the ALJ found that Dr. Key's opinion was not supported by his own examination findings.  (R. at 30-31.)  The ALJ noted that while there were some abnormal findings, Claimant could raise his left arm above his head and has some crepitus but full range of motion in his knees.  (*Id.*)  These examination findings do appear in the records from Claimant's most recent visits with Dr. Key, and the ALJ's reliance on them was appropriate given the extreme degree of limitation opined by Dr. Key.  (*Id.* at 1830-32.)  As to consistency, the ALJ noted that Dr. Key's opinion was inconsistent with medical records that showed normal gait, normal range of motion, and normal muscle strength.  (*Id.* at 31 (citing *id.* at 1143-60).)  The rheumatology records cited by the ALJ do indeed contain these findings.  (*Id.* at 1445, 1448, 1452.)  Claimant has not meaningfully demonstrated that this was a misrepresentation or incorrect generalization of the record given the deficiencies in his brief noted above, in particular, the lack of any cohesive summary of contradictory medical evidence.

For these reasons, the Court finds that the ALJ's discussion of Dr. Key's opinion was supported by substantial evidence and that Claimant has failed to demonstrate any error in the ALJ's decision.

## III.    CONCLUSION AND ORDER

For the reasons set forth above, the final decision of the Commissioner is **AFFIRMED**.  A

final judgment will be entered separately.

Colin H Lindsay, Magistrate Judge
United States District Court

cc:    Counsel of Record
September 22, 2025